# EDDIE DURANT v. STATE.

No. A-5027.   Opinion Filed Nov. 20, 1925.
(240 Pac. 1088.)

I. C. Sprague, for plaintiff in error.

George F. Short, Atty. Gen., and V. P. Crowe, Asst. Atty. Gen., for the State.

EDWARDS, J. From a conviction in the district court of McCurtain county on a charge of manslaughter, the plaintiff in error, hereinafter called defendant, has appealed.

The facts are about as follows: The defendant and deceased were cousins, members of the Choctaw tribe of Indians. The deceased and his wife were visiting at the home of defendant. On the day of the homicide the defendant, the deceased, the wife of each, and two sisters of the wife of deceased, were at Idabel, and in a wagon went to the home of defendant. A mile or so before they reached the home of defendant, the deceased and defendant got out of the wagon at the residence of one Sanders and purchased some whisky, which they took to the home of the defendant, and of which both the defendant and the deceased drank. About 11 o'clock at night the defendant and deceased left on horseback, going in the direction of Idabel, and again went to the house of Sanders, where they procured whisky, and there turned back toward the home of the defendant. They stopped at the house of one Wood and procured a drink of water, both were more or less intoxicated, and the witness Wood assisted each of them to remount his horse. When they arrived at about 150 yards of the defendant's home, about 1 o'clock at night, the defendant with a knife inflicted several wounds about the head, face, and shoulders of the deceased, left him there and returned to his house. The deceased halloed during the night; his cries becoming weaker until near morning. The next morning he was found unconscious on the ground, weak from the loss of blood, was taken to the residence of the defendant, where he died that afternoon.

The evidence indicates that both the deceased and de-

fendant, when under the influence of liquor, were turbulent characters. There was no eyewitness to the homicide, and it is the theory of the state that the deceased was killed in a drunken row in which the deceased was unarmed. The wife of the deceased testified that when defendant returned to his house he had a bloody knife in his hand, blood on his sleeve and on his face, and asked for his gun, and said he was going back to kill Crockett Wright; that he was in a drunken condition and raved and talked about the deceased, and asked the wife if he killed Crockett Wright would she stay with him, and said that Wright would not be likely to return that night. There was some corroboration of her testimony by her sisters who were at defendant's home. The evidence is that the deceased and defendant were friendly with each other all the time until they left the home of the defendant and even until they were at the place of the witness Wood on the night of the homicide. The defendant, in his own behalf, testified that the deceased was dangerous and threatening; that he knocked the defendant off his horse, said he was going to kill him, and was choking him when defendant drew his knife and used it in his self-defense.

Three assignments of error are argued in the brief of the defendant: First. Error of the court in limiting the evidence of the defendant as to the dangerous character of deceased. Second. Error of the court in the admission of evidence in behalf of the state   Third. Error of the court in his instructions to the jury. These assignments will be considered in the order presented.

Upon the first assignment, it appears that the defendant offered evidence that the deceased was a dangerous character, and, after the defendant had offered four witnesses upon this point, the court refused to permit further testimony. This, it is argued, was an unreasonable limitation, prejudicial to the defendant, citing Haag v. Cooley,

33 Kan. 387, 6 P. 587, and Browder v. State, 30 Tex. App. 614, 18 S. W. 197; it being contended that in any event the court should have advised counsel at the beginning of the introduction of his evidence on this point in order that he might select such witnesses as in his judgment would best establish his contention. It is well settled that it is within the discretion of the trial court to limit the number of witnesses to be heard on behalf of a party to establish a point or proposition. But, where the trial judge unreasonably limits a party, it is an abuse of discretion, and in some cases would constitute prejudicial error which would warrant a reversal.

An examination of the record before us discloses that four witnesses had testified that deceased's reputation as a violent and turbulent character was bad. This contention was in no wise contested by the state. It appears to have been conceded that the deceased had the reputation of committing acts of violence. This evidence was competent as throwing light on who was the probable aggressor at the time of the homicide. Since this point was virtually conceded by the state by its failure to attempt to refute it, the limiting of the witnesses on this point to four in number was, if error, not such as to require a reversal. In cases of this character, however, care should be exercised not to unduly limit the evidence offered by a defendant upon this or similar points.

Upon the second assignment several matters are presented. The defendant complains that the court erred in permitting the evidence of improper advance by the defendant toward the wife of the deceased on the night of the homicide after the difficulty. This contention is not borne out by the record. It appears that, after the defendant returned to his house, he came near the wife of the deceased upon a pallet, and the question was asked, "What did the defendant do?" and, upon an objection, the court

limited the inquiry to what the defendant said about Crockett Wright. This was not error.

Upon the same assignment, it is argued that the court erred in admitting evidence that the deceased and defendant were close friends and that their relationship was intimate; the defendant contending that this evidence would lead the jury to believe that the defendant bore the same reputation for being quarrelsome and dangerous as did the deceased, and was therefore prejudicial. Evidence of previous relations between the parties is competent as tending to cast some light on the difficulty in which the deceased lost his life. 30 C. J. 178.

Under this assignment, it is further contended that the court erred in permitting the state, on cross-examination, and on rebuttal, to ask questions and present evidence tending to show that certain of the defendant's witnesses had approached witnesses for the state in an attempt to influence their testimony. It is always competent to show, on cross examination, the interest or bias of a witness. Such evidence is not collateral, and, where the testimony of a witness on such point, on cross-examination, is adverse to the party cross-examining, such party is not bound to accept the statement, but may offer evidence to contradict such witness. Gibbons v. Territory, 5 Okla. Cr. 212, 115 P. 129.

The third assignment is directed to the court's instruction No. 14 as follows:

"If you find from the evidence in this case that the defendant had committed acts of violence upon and against persons other than the defendant, then you may consider that fact or those facts in connection with all the other facts and circumstances in the case as going to show who was probably the aggressor or brought about the difficulty in which the deceased lost his life."

It will be observed that in this instruction the court

used the word "defendant" in the first instance when it should have used the word "deceased." This, it is argued, is misleading, and must have been understood by the jury as informing them that they might consider acts of violence committed by the defendant against other persons. Indorsed upon this instruction is a memorandum by the trial court that the error in his use of the word "defendant" was not called to his attention until the hearing of the motion for a new trial. We gather that the misuse of the word "defendant" for "deceased" was not detected by the court, county attorney, or counsel for the defendant until after the return of the verdict. If this, however, should be deemed prejudicial to the substantial rights of the defendant, the fact that the mistake was inadvertent would not render it any the less erroneous. 16 C. J. 1049. If, in the settling of the instructions by the court and counsel before they were read to the jury and upon their being read to the jury in open court, the mistake was not discovered by either counsel for the state, for the defendant, or by the court, then it would seem that it would not be misleading to the jury.

The intent of the instruction is obviously to advise the jury that they might take into consideration acts of violence committed by the deceased against persons other than the defendant for the purpose of determining who was the probable aggressor in the difficulty in which he lost his life, and as bearing on the question of self-defense. There was no proof of acts of violence by the defendant against other persons, and the instruction in that particular, if taken literally, would have had no meaning for the jury. Clearly, they must have understood it to apply to acts of violence of the deceased toward other persons than the defendant. While this instruction embodies a mistake and misuse of terms, it could not, we think, under the record, constitute prejudicial error.

Upon a consideration of the entire record, it appears that the defendant was fairly tried, the issues fairly submitted, and no reason for a reversal is apparent.

The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.